## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

KEITH JOHNSON,

                    Plaintiff,


v.                                                        CIVIL ACTION NO.    2:22-cv-507


ASTORG AUTO OF
CHARLESTON, INC., et al.,

                    Defendants.


### PROPOSED FINDINGS AND RECOMMENDATION

        This matter is assigned to the Honorable Joseph R. Goodwin, United States

District Judge, and it is referred to the undersigned United States Magistrate Judge for

submission of proposed findings and a recommendation for disposition, pursuant to 28

U.S.C. § 636(b)(1)(B). (ECF No. 5.) Plaintiff Keith Johnson ("Plaintiff" or "Mr. Johnson")

initiated this civil action on November 7, 2022, naming Astorg Auto of Charleston, Inc.

("Astorg"), and United Bank Inc. ("UBI") (together, the "Defendants"). (ECF No. 2.) On

December 1, 2022, the Defendants jointly filed "Defendants' Motion to Dismiss" (ECF No.

11), seeking dismissal of this civil action. In response, on December 14, 2022, Plaintiff

filed a Motion for Leave to Amend his Complaint (ECF No. 20), to which Defendants filed

an Objection on December 22, 2022 (ECF No. 24). On January 11, 2023, Plaintiff filed a

Response to Defendants' Motion to Dismiss, to which Defendants filed an Objection on

January 17, 2023. (ECF Nos. 28; 29.) The time for further briefing having expired

pursuant to Local Rule 7.1(a)(7) of the Court's Local Rules of Civil Procedure, both motions are ripe for review. For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 11) be **GRANTED**, and Plaintiff's Motion for Leave to Amend his Complaint (ECF No. 20) be **DENIED**.

## I.    BACKGROUND

Plaintiff Keith Johnson initiated this civil action on November 7, 2022, naming two Defendants—Astorg Auto of Charleston, Inc. ("Astorg") and United Bank Inc. ("UBI") (together, the "Defendants"). (ECF No. 2.) Plaintiff's Complaint asserts that Defendants are liable on five counts: (1) violations of the Fair Debt Collection Practices Act, (2) breach of fiduciary duty, (3) fraud in the inducement, (4) unjust enrichment, and (5) conversion of funds. *See id.* The remainder of Plaintiff's Complaint is otherwise difficult to discern. One reason for this inscrutability is that the Complaint is littered with the archaic, quasi-legal jargon commonly employed by the Sovereign Citizen movement, a school of thought based upon "misread[ing], misconstru[ing], and misunderstand[ing] the United States Constitution." Caesar Kalinowski, *A Legal Response to the Sovereign Citizen Movement*, 80 Mont. L. Rev. 153, 154 (2019). *See also United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (explaining that "sovereign-citizen"-type arguments have "no conceivable validity in American law"); *United States v. Benabe*, 654 F.3d 753, 676 (7th Cir. 2011) (explaining that "sovereign-citizen" type claims of individual sovereignty and immunity from prosecution have been repeatedly rejected by courts). Sovereign-Citizen doctrine commonly involves objections to taxation and submitting to the jurisdiction of state and

federal courts, but can also involve "other civil claims based on abstract violations of the Uniform Commercial Code."[1] Kalinowski, *supra*, at 155.

It is undisputed that on August 13, 2021, Plaintiff entered into a "Retail Installment Contract and Security Agreement" (hereinafter the "Security Agreement") with Defendant Astorg Auto of Charleston, Inc. ("Astorg") for the purchase and financing of a 2021 Audi Q7 sport-utility vehicle ("SUV"). (ECF Nos. 2 at 2; 2-1 at 2; 11-3 at 4.) Plaintiff attached a copy of the referenced Security Agreement to his Complaint. (ECF Nos. 2; 2-1.) Directly above Plaintiff's signature to the Security Agreement, the document contains a "Signature Notice" in font that is larger than the surrounding text; the notice states that "[t]he Seller may assign this Contract and retain its right to receive a part of the Finance Charge." (ECF No. 2-1 at 5.) Additionally, the Security Agreement contained a "Telephone Monitoring and Calling" provision which stated that the Plaintiff agreed "In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you[.]" *Id.* Finally, the Security Agreement also contained a provision notifying Plaintiff that his failure to perform any obligation under its terms entitled the security holder to "exercise our

---

[1] Plaintiff does not assert that he is a "sovereign citizen" or an adherent to the Sovereign-Citizen Movement, nor does the undersigned label him as such herein. The Court merely notes the similarity of Plaintiff's filings to the types of legal theories, representations, and arguments typically made by sovereign citizens. *See generally* Kalinowski, *supra*. For instance, Plaintiff expressly notes that he does not submit to this Court's jurisdiction in bringing this action, but instead "require[s] that the court recognize I am here in special appearance as the beneficial equitable title holder on the matters involving the Named Trust (KEITH LYLE JOHNSON) in this matter." (ECF No. 22 at 1.) Likewise, Plaintiff uses specific language to describe his personhood and citizenship that is typical of the movement, such as his self-identification as "Executor and Beneficiary over body mind and soul, the general guardian and general executor of the matter," and his request to "put on the record of this court that I am a living man, the blood flows and the flesh lives[.]" (ECF No. 2 at 1.) Additionally, Plaintiff avoided providing his personal address—a common Sovereign-Citizen-type tactic—and instead provides a mailing address to a Staples retail store in Charleston, West Virginia. (*See, e.g.*, ECF No. 20 at 12 (listing his mailing address as "c/o 800 Nitro Mkt Place 1012, Charleston, West Virginia").)

remedies against . . . you," which included "immediately tak[ing] possession" of the vehicle, as well as "su[ing] you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us." (ECF No. 2-1 at 3.) As evidenced by the face of the Security Agreement Plaintiff attached to his Complaint, Astorg assigned the Security Agreement to United Bank Inc. the same date as Plaintiff's purchase of the SUV, on August 13, 2021. ("UBI"). *Id.*

Plaintiff's November 7, 2022 Complaint asserts that his purchase of the SUV "resulted in fraud and misrepresentations under a repayment scheme" with UBI. (ECF No. 2 at 3.) Plaintiff alleges that Astorg was his "fiduciary," that it "entered into a financial transaction adversely affecting" Plaintiff's interests, and that Astorg "utilized" Plaintiff's "financial resources" for Defendants' "personal profit with no significant benefit accruing to Keith." *Id.* at 4. Without elaborating, Plaintiff went on to allege in his Complaint that as a "material inducement" to enter into the Security Agreement, Astorg "made a series of representations and warranties intended to mislead Plaintiff." *Id.* Notably, the Complaint makes no effort to identify or otherwise describe these "representations and warranties," nor to identify, explain, describe, or otherwise allege the manner in which Plaintiff was purportedly "deceive[d] and mislead" by the Defendants. *Id.* at 5. As an "example" of the misleading "representations and warranties" that Astorg allegedly made, Plaintiff's Complaint asserts that, "[f]or example, Astorg failed to disclose information that would and could convey marketable title to the property to the true beneficial owner, Keith Lyle who has an absolute birthright to real property and to physically control it." *Id.* at 4. The Complaint does not contain any further factual allegations, however, to identify or explain what type of information Astorg allegedly did not disclose, as well as what "real

property" Plaintiff is referencing or its significance in relation to the transaction memorialized in the Security Agreement.

Similarly, Plaintiff further alleges that Defendants sent recurrent, "false statements in the mail," regarding "alleged amounts due," and "contact[ed] [Plaintiff] through the mail and telephone regarding the alleged debt," which he claims violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (ECF No. 2 at 1-5.) However, the Complaint does not contain any further factual allegations to identify the content of the statements, correspondence, or phone calls, or to describe the manner in which these unidentified communications are alleged to have violated the FDCPA. *See id*. In this same vein, the Complaint further alleges that Defendants also violated the FDCPA "by bringing legal actions" against the Plaintiff—though the Complaint does not provide any information regarding these "legal actions." *Id*. at 5. While it is unclear due to the barebones factual allegations in the Complaint, Plaintiff seems to imply that Astorg's assignment of the Security Agreement to UBI constituted a "fraudulent transfer," that was allegedly made "to hinder, delay or defraud" the Plaintiff, without providing Plaintiff "a reasonably equivalent value in exchange for the transfer or obligation," to which Plaintiff apparently believes he was entitled. *Id*. The Complaint does not make any further allegations to identify or otherwise explain what made the assignment fraudulent or how the assignment hindered, delayed, or defrauded Plaintiff.

On December 1, 2022, Defendants filed their Motion to Dismiss, seeking dismissal of all Plaintiff's claims. (ECF No. 11.) Defendants argued therein that Plaintiff's Complaint "is in whole legally insufficient when analyzed under Rule 8 of the Federal Rules of Civil Procedure," because the Plaintiff "pleads no set of facts that, if assumed true, would entitle

Plaintiff to the relief he seeks[.]" *Id.* at 2. Additionally, Defendants argued that Plaintiff is barred by the "Claim Splitting Doctrine" from bringing the claims set forth in his Complaint in this Court because he was obligated to bring those as compulsive counterclaims in pending litigation before a West Virginia State Court that predates the instant matter. (*See* ECF Nos. 11-1 through 11-7.) Defendants each filed a separate action against Plaintiff in the Circuit Court of Kanawha County, West Virginia, seeking payment of amounts Plaintiff allegedly owed pursuant to the Security Agreement. (ECF No. 12 at 2.) The two actions were subsequently consolidated on August 23, 2022, and—at least as of the time Defendants' motion was filed—remains pending. (ECF No. 11-5.)[2]

On December 5, 2022, the Court entered an Order expressly notifying Plaintiff that his failure to file a response to Defendants' motion to dismiss by December 22, 2022 "may constitute abandonment" of his claims "and result in dismissal." (ECF No. 14.) In response, on December 14, 2022, Plaintiff filed a Motion for Leave to Amend his Complaint. (ECF No. 20.) Like the Complaint, Plaintiff's motion is difficult to discern due to its dearth of substantive statements, which are interspersed with verbose and irrelevant repetitions of typical "sovereign-citizen"-type doctrine regarding the Court's jurisdiction and Plaintiff's perceived legal status. (*See, e.g.,* ECF No. 20 at 2 ("The Respondent has come into this matter related to a trust in the capacity that is unsustainable and thus is perceived as standing in its unadulterated non-immune capacity and is liable for all damages incurred, assessments, as well as penalties.").) Aside from the title of the motion

---

[2] As these facts are matters of public record in court proceedings, they are subject to judicial notice without the need to convert Defendants' motion to dismiss into one for summary judgment. *See Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (explaining that "a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment").

listed in the style of the document, Plaintiff's motion does not actually request leave to amend the Complaint, does not discuss what amendments to the original Complaint Plaintiff anticipated, does not proffer any additional facts in support of Plaintiff's motion, and does not respond to or otherwise mention the arguments raised in Defendants' Motion to Dismiss. (*See generally* ECF No. 20.)

On December 22, 2022, Defendants filed an Objection to Plaintiff's Motion for Leave to Amend, arguing that it should be denied because it is "futile and arguably made in bad faith." (ECF No. 24 at 2.) In their Objection, the Defendants emphasize the lack of relation between the title and substance of Plaintiff's motion to amend, asserting that instead of attaching a proposed amended complaint or otherwise proffering any additional facts in support of his motion, the Plaintiff appears to have copied a "template obtained from the internet with no bearing to the facts or claims in Plaintiff's original Complaint." *Id.*[3] Lastly, Defendants assert that "even if Plaintiff's Complaint were to be amended . . . such amendment fails to state a claim upon which relief may be granted," because Plaintiff's motion "does not contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 3. Plaintiff did not file a Reply in support of his motion to amend the Complaint, and the deadline to do so has expired pursuant to Rule 7.1(a)(7) of the Court's Local Rules of Civil Procedure.

On January 11, 2023, Plaintiff filed an untimely "Response to Defendant[s'] Motion [to Dismiss]." (ECF No. 28.) Again, it is difficult to interpret, but Plaintiff appears to assert

---

[3] Defendants also assert that Plaintiff's Motion to Amend may have been prepared and submitted by a non-party and not the Plaintiff, because his motion contains the statement "I am not acting in the capacity as the named Plaintiff[.]" (ECF No. 24 at 3 (citing ECF No. 20 at 7).) However, Defendants misapprehend the significance of the statement, which—like many "sovereign-citizen"-type filings—utilizes carefully-selected phrases believed by adherents to protect against entering into a "contract" with the government, which purportedly would result in waiver of this self-declared sovereignty.

that Defendants' motion should be denied because they repossessed the subject SUV, which Plaintiff asserts was his "private property" that was taken "under extreme duress and the threat of violence against Plaintiff's life, property, and liberties without just compensation, without expressed and/or written consent of Plaintiff." *Id.* at 3. Defendants filed an Objection to Plaintiff's Response on January 17, 2023, arguing that it was not only untimely, but "[wa]s deficient and insufficient as it d[id] not address any of Defendants' Motion to dismiss arguments." (ECF No. 29 at 2.) The parties' motions are now fully briefed and ripe for adjudication.

## II.   **LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). By filing a motion pursuant to Rule 12(b)(6), a defendant asserts that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to ensure a plaintiff's complaint provides the defendant with "fair notice" of the plaintiff's claims and the "grounds" for plaintiff's alleged entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Rule 12(b)(6) under this standard, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570;

*see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). Under the *Twombly* plausibility standard, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Nevertheless, the rule demands more than "bald accusations" or "mere speculation." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (citing *Twombly*, 550 U.S. at 555). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, which suffices "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *accord Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only

the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

When the Plaintiff is proceeding without counsel, "[a] document filed pro se is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because such deference is given to *pro se* complaints, the Court should grant leave to amend where a *pro se* complaint can be remedied by an amendment, to allow the development of a potentially-meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) (explaining that a district court should allow *pro se* plaintiffs a reasonable opportunity to develop pleadings.); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (stating that a *pro se* plaintiff should be given an opportunity to particularize potentially viable claims). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him, or "conjure up questions never squarely presented" to the court. *Randolph v. Baltimore City Atates Atty.*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014)

(citations omitted)). Thus, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### III.   ANALYSIS

In their Motion to Dismiss, Defendants argue that dismissal is proper for two reasons—first, because Plaintiff may not engage in "claim splitting" by prosecuting claims against Defendants in multiple jurisdictions all stemming from the same sale of the SUV—and second, because Plaintiff failed to state a plausible claim for relief in his Complaint. Plaintiff wholly failed to substantively respond to any of Defendants' factual assertions or arguments in support of dismissal; nonetheless, because "this Court does not treat a plaintiff's failure to respond to a motion to dismiss as a per se admission that the motion should be granted," the Court considered the issues on their merits. *See Hanshaw v. Wells Fargo Bank, N.A.*, 2:11-cv-331, 2014 WL 4063828, at *4 (S.D. W. Va. Aug. 14, 2014). Additionally, the Court examined its jurisdiction over the subject matter set forth in Plaintiff's Complaint *sua sponte*. For the reasons set forth herein, dismissal is proper.

### A.   Claim Splitting

Defendants first argue that dismissal is proper because the claims Plaintiff asserts in the instant action constitute compulsory counterclaims that should have been raised in the Defendants' consolidated action in the Circuit Court of Kanawha County, West Virginia. In support of their argument, Defendants point to a 2017 decision by the Supreme Court of Appeals of West Virginia (the "WV Supreme Court"). *See Dan Ryan*

*Builders, Inc. v. Crystal Ridge Dev., Inc.*, 803 S.E.2d 519, 530-31 (W. Va. 2017). In that case, the WV Supreme Court explained that, "[l]ike res judicata," the doctrine of claim splitting generally "prohibits a plaintiff from prosecuting [his or her] case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Id.* The rationale for this doctrine is "that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits." *Estate of Jones by Jones v. City of Martinsburg*, 18-1045, 2020 WL 8991834 (W. Va. 2020). In this Court, likewise, "[i]n a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and arises out of the same transaction or series of transactions as the first claim." *Young v. Lacy*, 1:17-cv-3633, 2019 WL 10856834, at *4 (S.D. W. Va. Dec. 4, 2019), *adopted*, 2020 WL 4251798 (July 24, 2020).

The Court agrees with Defendants that the doctrine of claim splitting precludes Plaintiff from bringing the instant action, because if the first suit were already final, res judicata would bar Plaintiff's claims. As Defendants quoted in their supporting memorandum, the WV Supreme Court stated that "[t]o determine whether a plaintiff is claim-splitting, as would support dismissal, the proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis." (ECF No. 12 at 8 (citing *Estate of Jones by Jones v. City of Martinsburg*, 18-0927, 18-1045, 2020 WL 8991834, at *9 (W. Va. 2020)).) Pursuant to the doctrine of res judicata, a prior judgment bars the relitigation of claims that were raised or could have been raised in the prior litigation. *Serna v. Holder*, 559 Fed. App'x 234, 237 (4th Cir. 2014) (per curiam) (quoting *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir.

12

1999)). A prior claim precludes a later one if three conditions are satisfied: first, that the prior judgment was final, on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; second, that the parties are identical in the two actions; and third, that the claims in the second matter are based upon the same common nucleus of operative fact as the earlier proceeding. *Pittston*, 199 F.3d at 704.

Here, "assuming the first suit was already final" for purposes of this analysis, *see Estate of Jones*, 2020 WL 8991834, at *9, the remaining two elements are plainly satisfied. As to the identity of the parties, the preceding lawsuit involved the same parties—Plaintiff and both Defendants. (*See* ECF Nos. 1-11 through 11-7.) Furthermore, Plaintiff's claims in the instant action arise from the same Security Agreement at issue in the preceding lawsuit, and were raised therein by Plaintiff's "Answer and Affirmative Defense." (ECF No. 11-6.) The ensuing result is "piecemeal" litigation of the same issues in two separate jurisdictions—precisely what the doctrine of claim splitting is designed to prevent. Thus, the undersigned **FINDS** that Plaintiff is precluded from bringing the instant action based upon the doctrine of claim splitting, and Defendants' motion to dismiss should be **GRANTED** on this ground.

### B. Plausibility of Plaintiff's Allegations

Independently from Defendants' argument that this civil action is barred by the doctrine of claim splitting, Defendants also argued that dismissal is proper because Plaintiff's Complaint fails to allege sufficient facts to state a plausible claim for violations of the Fair Debt Collection Practices Act ("FDCPA"), breach of fiduciary duty, fraud, unjust enrichment, conversion of funds, or the "Federal Debt Collect Procedure Act."

### i.    <u>Violations of the FDCPA</u>

Defendants first argued that Plaintiff's claim under the FDCPA should be dismissed for failure to state a claim, because the Defendants are not "debt collectors" subject to the statute. (ECF No. 12 at 10.) The Court agrees. The FDCPA defines a debt collector as "(1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 140 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017). By definition, therefore, a creditor is not a debt collector. *Id.* at 136. As the Fourth Circuit explained, "[t]he material distinction between a debt collector and a creditor . . . is therefore whether a person's regular collection activity is only for itself (a creditor) or whether it regularly collects for others (a debt collector)." *Id.* at 136-37. Plaintiff's Complaint does not allege that the Defendants' principal purpose is to collect debts, that Defendants regularly collect debts owed to another, or that Defendants use another name to collect on their own debts. Further, the Security Agreement Plaintiff attached to his Complaint plainly sets forth a creditor-debtor relationship. (ECF No. 2-1.) Simply put, because the plain face of the Security Agreement shows that Defendants are creditors under the agreement—and Plaintiff does not dispute or allege otherwise—by definition the Defendants are not debt collectors and therefore under the circumstances at hand cannot be liable for alleged violations of the FDCPA.  *Henson*, 817 F.3d at 136.

Moreover, even if the Defendants were "debt collectors" within the scope of the statutory definition, Plaintiff's Complaint is wholly devoid of any factual allegations from which a reasonable person could infer that Defendants violated any provision of the

FDCPA. Plaintiff makes allusions to "contact" through the mail and telephone calls from the Defendants, but does not set forth any factual allegations regarding the actual substance of these communications, who made the communications on behalf of the corporate Defendants, when the communications occurred, or what characteristic of the purported communications allegedly violated the FDCPA. Additionally, the Security Agreement *signed by Plaintiff* contained a "Telephone Monitoring and Calling" provision which expressly stated that "[i]n order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you[.]" (ECF No. 2-1 at 5.) In light of these undisputed facts, the undersigned **FINDS** that Plaintiff's FDCPA claim is frivolous and must be dismissed.

### ii.    Breach of Fiduciary Duty

Defendants next argue that Plaintiff's claim for breach of fiduciary duty should be dismissed for failure to state a claim, because Plaintiff has not alleged that there was a "special relationship" giving rise to a fiduciary duty on the part of either Defendant on behalf of the Plaintiff; nor has Plaintiff alleged any facts that would lead a reasonable person to infer that Defendants owed Plaintiff a special fiduciary duty. (ECF No. 12 at 11-12.) The Court agrees. Plaintiff merely alleges that he and Astorg entered into "a consumer credit transaction" as evidenced by the Security Agreement. (ECF No. 2 at 2.) Under applicable West Virginia law, these simple, arms-length transactions do not confer a fiduciary duty as alleged by Plaintiff absent a "special relationship" between the two parties. *See White v. AAMG Constr. Lending Ctr.*, 700 S.E.2d 791, 798 (W. Va. 2010). Such relationships generally arise in the context of a borrower and lender's agreement

only when the lender performs "services not normally provided by a lender to a borrower." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 839 (S. D. W. Va. 2014).

Nor does Astorg's assignment to UBI give rise to a fiduciary duty. The option of assignment is expressly contemplated by the Security Agreement. Directly above Plaintiff's signature to the Security Agreement, the document contains a "Signature Notice" in font that is larger than the surrounding text; the notice expressly states that "[t]he Seller may assign this Contract and retain its right to receive a part of the Finance Charge." (ECF No. 2-1 at 5.) Nothing from the face of Plaintiff's Complaint or the Security Agreement indicate any basis for a special relationship arising from this routine transaction that was expressly contemplated in the Security Agreement. The Complaint does not allege that a special relationship arose between Plaintiff and either of the named Defendants; nor does the Complaint allege facts from which it could be reasonably inferred that a special relationship arose due to services provided by either Defendant. (*See generally* ECF No. 2.) The undersigned accordingly **FINDS** that Plaintiff's breach-of-fiduciary-duty claim is frivolous and must be dismissed.

### iii.    <u>Fraud</u>

Defendants next argue that the Court should dismiss Plaintiff's claim of fraud because the Complaint failed to plead a cognizable claim with the requisite particularity. (ECF No. 12 at 12.) The Court agrees. Rule 9(b) of the Federal Rules of Civil Procedure mandates a heightened pleading requirement for plaintiffs who assert claims of fraud. *See* Fed. R. Civ. P. 9(b) (requiring a party to state with "particularity" the circumstances constituting fraud). Failure to plead these fraudulent circumstances with particularity is

16

fatal to a fraud claim, entitling the defendant to dismissal. *See In Town Hotels Ltd. P'shp v. Marriott Int'l, Inc.*, 246 F. Supp. 2d 469, 486 (S.D. W. Va. 2003).

Here, Plaintiff's fraud claim as asserted in his Complaint fails to meet the plausibility standard of Rule 8. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 684 (explaining that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion). The Complaint merely alleges fraud in broad and vague terms that fail to put Defendants on notice of what alleged act or omission on their part gave rise to this civil action. For instance, in Count 2 of the Complaint—where Plaintiff asserts his claim of "fraud in the inducement"—Plaintiff never alleges what acts or omissions on the part of the Defendants purportedly constituted fraud. (*See* ECF No. 2 at 6-7.) Instead, the Complaint merely states—puzzlingly—that "[a]s alleged, to induce Plaintiff to enter into the contract, Astorg misrepresented to Plaintiff in regard to the security-backed asset which is of monetary value and as beneficiary real property that belongs to Keith." *Id.* at 6. Based upon the paucity of these allegations, Defendants and the Court can only speculate as to what Astorg purportedly misrepresented "in regard to the security-backed asset." *Id.* Likewise, it can only be speculated what "asset" or "real property" Plaintiff is referring to in the Complaint. It seems logical to assume Plaintiff may be referring to the SUV that he purchased from Astorg pursuant to the Security Agreement, but Plaintiff specifically refers to the asset as "real property," and an automobile is obviously not real property.[4] Based upon these

---

[4] The term "real property" is popularly referred to as "land" or "real estate," and generally refers to a parcel of soil and the buildings and other permanent fixtures which are attached to that soil. *See* PROPERTY, Black's Law Dictionary (11th ed. 2019). In contrast, "personal property" is defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *Id.*

fundamental deficiencies in the Complaint, the undersigned **FINDS** that Plaintiff has failed to assert sufficient facts to state a plausible claim for relief.

Due to these deficiencies, Plaintiff's Complaint not only fails to meet the plausibility standard under Rule 8, but also wholly fails to meet the heightened standard for fraud-based claims. As the Fourth Circuit has explained, the facts that a plaintiff must plead with particularity pursuant to Rule 9(b) are comprised of "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Stated another way, the Complaint must explain the "who, what, when, where, and how" of the alleged fraud. *See Beattie v. Skyline Corp.*, 906 F. Supp. 2d 528, 537 (S.D. W. Va. 2012) (citing *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

On review, it is plain that the Complaint does not provide the answer to any of these questions. The Complaint asserts vaguely that Astorg made false representations to Plaintiff and took steps to deceive him, but these allegations are totally devoid of the necessary factual allegations to establish who on behalf of the corporate Defendants perpetrated the fraud; what the alleged false representations were; when these events took place; where these events took place; or how these events took place. This is plainly inadequate. Because the Complaint fails to set forth any factual or legal basis for Plaintiff's fraud claim, the undersigned accordingly **FINDS** that it must be dismissed as frivolous.

### iv.    Unjust Enrichment

Likewise, the Court agrees with the Defendants that Plaintiff's Complaint lacks any factual or legal basis for asserting a claim for unjust enrichment. (ECF No. 12 at 14.) In

support of this claim, Plaintiff alleges that Defendants "fail[ed] and refus[ed] to honor [their] legal and contractual obligation to return the Plaintiff's deposit and ownership of real property that is of monetary value," thereby "profit[ing] and enrich[ing] themselves unjustly at the expense and to the detriment of the plaintiff." (ECF No. 2 at 8.)

First, Plaintiff lacks a legal basis to bring an unjust-enrichment claim because it is undisputed that the sale and financing of the SUV was made pursuant to a contract—the Security Agreement. It is well-established under West Virginia law that, generally, "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *Gulfport Energy Corp. v. Harbert Private Equity Partners, LP*, 851 S.E. 2d 817, at Syl. Pt. 3 (W. Va. 2020). This rule flows from the very nature of unjust enrichment claims, which can "only exist in the absence of an agreement." *Ohio Valley Health Servs. v.* Riley, 149 F. Supp. 3d 709, 721 (N.D. W. Va. 2015). Plaintiff's own allegations establish that the Security Agreement was an express contractual agreement covering precisely the same subject matter of the parties' dispute— the sale and financing of the subject vehicle, and subsequent assignment to UBI.

Moreover, the Complaint lacks any factual basis to bring an unjust-enrichment claim because it completely fails to assert what alleged act or omission by the Defendants purportedly gave rise to the claim. Plaintiff fails to allege what contractual term Defendants failed to honor, what contractual term obligated Defendants to "return the Plaintiff's deposit and ownership of real property," what "real property" the Complaint refers to and its role in the parties' contractual agreement, or even what alleged act or omission by the Defendants gave rise to their purported "legal and contractual obligation" or how such an act/omission enriched Defendants and damaged Plaintiff.  Because the

19

Complaint fails to set forth any factual or legal basis, the undersigned accordingly **FINDS** that Plaintiff's unjust-enrichment claim must be dismissed as frivolous.

### v.    Conversion

Next, the Court agrees with the Defendants that Plaintiff's Complaint lacks any factual or legal basis for asserting a claim for conversion. (ECF No. 12 at 16.) Plaintiff asserts his conversion claim in Count 4 of the Complaint, where he alleges the following:

> The plaintiff above has an absolute right of possession to the security because the plaintiff is the beneficial owner.
>
> Astorg and UBI intentionally non-disclosed information pertaining to the monetary value of the security and ownership of the real property for which was fraudulently converted for the benefit of the Astorg and UBI.
>
> As such the real property, was taken from the plaintiff unlawfully by Astorg and UBI, as Astorg and UBI never had the right as the owner of the plaintiff's real property.

(ECF No. 2 at 8-9.) Based upon these barebones allegations, the Court and the Defendants can only speculate what "real property" Plaintiff is claiming that Defendants converted. Without more, it is plain that Plaintiff lacks any basis to assert a conversion claim.

The tort of conversion under West Virginia law is defined as "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990). Importantly, this cause of action "is limited to actions involving personal property and not real property." *Schubert v. Fed. Nat'l Mortg. Ass'n*, 5:12-cv-166, 2013 WL 12137597, at *3 (N.D. W. Va. Mar. 27, 2013) (citing *Rodgers*, 399 S.E.2d at 678). Thus, the allegation that Defendants are liable for converting the unspecified "real property" referred to in Plaintiff's Complaint fails as a matter of law.

Additionally, the Complaint's allegations of fact are fundamentally insufficient for the same reasons stated above with respect to Plaintiff's other claims. Even if West Virginia law permitted a litigant to recover for conversion of real property, Plaintiff's Complaint completely fails to identify any real property at all, let alone allege that he was entitled to possess the property. Likewise, to the extent Plaintiff used the term "real property" by mistake, but intended to refer to the SUV described in his Complaint, Plaintiff nonetheless fails to allege any acts or omissions by Defendants that interfered with Plaintiff's possession of the SUV, or otherwise exerted dominion over the SUV, such as by repossession. Moreover, Plaintiff failed to allege any act or omission by the Defendants that was purportedly inconsistent with Plaintiff's rights under the Security Agreement. From the face of the Complaint, therefore, the Court and the Defendants can merely speculate how the Defendants purportedly converted this unidentified property, at an unspecified time or location, and in an unspecified manner, through an unspecified means. This is clearly inadequate. Because the Complaint fails to set forth any factual or legal basis, the undersigned accordingly **FINDS** that Plaintiff's conversion claim must be dismissed as frivolous.

In summary, Plaintiff's Complaint fails to set forth allegations of fact that, if assumed true, would entitle him to relief against the Defendants. Only two material facts may reasonably be gleaned from the Complaint: first, that Plaintiff contracted with Astorg for the purchase of the SUV pursuant to the August 13, 2021 Security Agreement attached to the Complaint, and second, that Astorg then made an assignment to UBI that same day. Every other substantive allegation is made up of mere labels and conclusions. Without more, the Court and the Defendants can only speculate what purported acts or

omissions by Defendants form the basis for Plaintiff's claims. By offering nothing more than "bald accusations or mere speculation," the Complaint falls far short of the plausibility standard and subverts the purpose of Rule 8's pleading standard, which is to provide the Defendants with fair notice of the Plaintiff's claims or the grounds for his alleged entitlement to relief. *See Twombly*, 550 U.S. at 555-56. Furthermore, the Complaint is so devoid of legal and factual bases for this action that the undersigned **FINDS** it is patently frivolous, and dismissal is warranted.

### vi.    **Attorney Fees**

Defendants' motion to dismiss also challenges Plaintiff's request in the Complaint for an award of attorney's fees and expenses. (ECF Nos. 2 at 10; 12 at 17.) The Court agrees with Defendants that Plaintiff is not entitled to this relief, because *pro se* litigants by definition cannot be said to have incurred attorney's fees. As this Court previously noted, "[t]he overwhelming weight of federal authority indicates that *pro se* . . . litigants are not entitled to attorney's fees, even where the statute in question expressly and unambiguously provides for them." *King v. Erie Ins. Prop. & Cas. Co.*, 15-cv-11543, 2016 WL 1270260, at *4 (S.D. W. Va. Mar. 31, 2016) (citing *Kay v. Ehrler*, 499 U.S. 432 (1991); *White v. Arlen*, 614 F.2d 387 (4th Cir. 1980)). Accordingly, because the Complaint failed to set forth any basis for relief in the form of attorney's fees, Plaintiff's request for relief on this ground must be dismissed as a matter of law.

### C. **Amendment**

The undersigned further **FINDS** that dismissal of this civil action is proper because amendment would be futile under the circumstances. The Fourth Circuit explained that the Court may deny leave to amend when "the amendment would be

futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019). Those conditions are present in the instant action. Plaintiff's motion for leave to amend is patently frivolous, because it fails to set forth any factual or legal basis for filing an Amended Complaint. (*See* ECF No. 20.) Though Plaintiff's filing is styled as a motion for leave to amend, the substance of the motion completely sidesteps the issue. *See id.* Not only did Plaintiff fail to attach a proposed Amended Complaint, but his motion fails to address what amendments he intended to make to the Complaint, failed to proffer any additional facts in support of his motion, failed to respond to, address, or otherwise mention the arguments raised in Defendants' Motion to Dismiss— and even failed to actually request leave to amend the Complaint aside from the title of the motion. Thus, amendment would be futile, and dismissal of this frivolous action is proper.

### D. **Subject-Matter Jurisdiction**

Alternatively, the undersigned **FINDS** *sua sponte* that the Court lacks subject-matter jurisdiction over this civil action under the circumstances. Plaintiff asserted in his Complaint that "[t]his court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 which provides the District Court with jurisdiction over civil actions arising under the United States Constitution or laws of the United States." (ECF No. 2 at 2.) With the exception of Plaintiff's FDCPA claim, however, all of Plaintiff's claims against the Defendant are based upon tort and contract law; under the circumstances at hand, these claims arise under West Virginia State law, not federal law. And while in general an

FDCPA claim certainly does "arise under" federal law, it does not confer jurisdiction in this civil action because, as discussed above, Plaintiff's FDCPA claim is frivolous. Thus, Plaintiff has failed to demonstrate that this Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. § 1331. Furthermore, Plaintiff has neither alleged nor shown that there is subject-matter jurisdiction under 28 U.S.C. § 1332; nor could he. Even if the Court were to assume that Plaintiff could demonstrate that "the matter in controversy" in this civil action "exceeds the sum or value of $75,000," it is evident from the record that Plaintiff is not likely diverse in citizenship from the Defendants—both of which are West Virginia entities—within the scope of 28 U.S.C. § 1332.

In summary, as Plaintiff's claims against the Defendants do not fall within the limited "federal question" or "diversity of citizenship" categories of this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 or 1332, then Plaintiff may not pursue his claims in federal court, and this civil action must be dismissed without prejudice in its entirety pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

## IV.  **CONCLUSION**

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Leave to Amend his Complaint (ECF No. 20) be **DENIED**, that Defendants' Motion to Dismiss (ECF No. 11) be **GRANTED**, and that this civil action be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, the undersigned **RECOMMENDS** that this civil action be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Goodwin.

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, transmit a copy to counsel of record via the Court's CM/ECF system, and mail a copy of the same to any *pro se* party at his or her address of record.

ENTER:       August 24, 2023

Dwane L. Tinsley
United States Magistrate Judge

25